# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JUAN JOSE AMESQUITA,

Plaintiff,

v.

MACOMBER, *et al.*,

Defendants.

Case No. 1:23-cv-01604-KES-BAM (PC)

ORDER GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SURREPLY (ECF NO. 42)

FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 38)

**FOURTEEN (14) DAY DEADLINE**

## I. Introduction

Plaintiff Juan Jose Amesquita ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds against Defendants Howard and Chavez for deliberate indifference to medical care in violation of the Eighth Amendment.

Currently before the Court is Defendants' motion for summary judgment on the ground that the undisputed material facts show that Defendants are entitled to summary judgment, filed January 30, 2026. (ECF No. 38.) [1] Plaintiff opposed the motion on February 27, 2026. (ECF No.

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). (ECF No. 38-11.)

39.) Defendants replied on March 9, 2026. (ECF No 40.) Plaintiff filed a surreply to Defendants' reply on March 27, 2026. (ECF No. 41.) Defendants filed a motion to strike Plaintiff's surreply on April 9, 2026. (ECF No. 42.) Plaintiff did not oppose the motion to strike.

The motions are deemed submitted. Local Rule 230(l).

For the reasons set forth below, the Court will grant the motion to strike and recommend that Defendants' motion for summary judgment be granted.

**II. Defendants' Motion to Strike**

Defendants move to strike Plaintiff's surreply, arguing that Plaintiff filed it without obtaining leave of court and that it does not fall within one of the exceptions to doing so delineated by this Court's Local Rules. (ECF No. 42.)

Generally, parties do not have the right to file surreplies, and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). However, district courts have the discretion to either permit or preclude a surreply. *See U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); *JG v. Douglas Cnty. Sch. Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). In this Circuit, courts are required to afford pro se litigants additional leniency. *E.g.*, *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

Here, Plaintiff did not seek leave of this Court before filing his surreply, nor did the Court request that one be filed. The Court's Local Rules provide that after a reply is filed, no additional memoranda, papers, or other materials may be filed without prior Court approval except for objections to reply evidence or a notice of supplemental authority. Local Rule 230(m). Plaintiff's filing is neither objections to Defendants' reply evidence nor a notice of supplemental authority as permitted by this Court's Local Rules. Accordingly, Defendants' motion to strike Plaintiff's surreply will be granted.

Even if the Court were to consider Plaintiff's surreply, it does not raise a genuine dispute of material fact sufficient to defeat summary judgment. Instead, Plaintiff primarily offers a comparison between statements in the Incident Reports prepared by Defendants on December 12, 2022, and their declarations in support of the motion for summary judgment. (*See* ECF No. 41 at 2-19.)

Plaintiff also purports to dispute certain facts in Defendants' separate statement of undisputed facts in support of summary judgment. (ECF No. 41 at 21-25.) However, Plaintiff fails to provide supporting evidence for the facts he claims are in dispute, stating only "dispute" or "disputed." (*Id.*) Federal Rule of Civil Procedure 56(c)(1) specifically requires that a party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record . . . or [ ] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Similarly, pursuant to Local Rule 260(b), a party opposing a motion for summary judgment is required to deny those facts that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."

## III. Allegations in the Complaint

Plaintiff alleges that on 12/12/22, correctional officers Howard and Chavez were working as ADA medical transportation team at O.P.H.U. (hospital). Both officers Howard and Chavez loaded Plaintiff on the ADA medical prison van. Howard informed Chavez that the seatbelt(s) to secure Plaintiff were not good and not working. Howard asked Chavez what he should do. Chavez replied that "we have our orders to take him to his appointment." Howard and Chavez existed the van and had a whispered conversation. Howard drove the van, and Plaintiff yelled to him that Plaintiff was not wearing a seatbelt! Howard yelled back to calm down and "we know" and said don't worry because he and his partner were safe drivers. He then said that he "takes that back" because he can't speak for his partner. He laughed.

On the way back from the hospital, Howard and Chavez did not put the seatbelt on Plaintiff because it was broken, but put Plaintiff in the van at the prison. Chavez was now driving

and stopped so he and Howard could eat.

Once Chavez drove on the freeway, Plaintiff believes Chavez was going 70 to 80 mph, faster than Howard had driven on the freeway. "All of a sudden, I went airbourne out of my wheelchair, was no watch out!! no honking, no swerving, nothing no warning." Plaintiff slammed head first on the metal and was hurt in bad pain and scared.

Howard opened the door to the van where Plaintiff landed. Plaintiff asked what happened. Howard said that a car pulled out in front of the van. Howard kept saying we have to get you back on the wheelchair. Chavez and Howard were acting strange. Neither Howard nor Chavez called to report a reckless or drunk driver or get a license plate number or anything about the car. Plaintiff asked not to be moved because he was hurting bad, but Plaintiff's pleas fell on deaf ears.

Howard and Chavez said that they cannot call for help because we are on the side of the freeway. Plaintiff said to leave him on the floor until you can get to a hospital or some safe place. But Howard and Chavez wanted to move Plaintiff back to the wheelchair. Howard and Chavez "twisted me, drop me bent me any and all ways they drug me rolled me everything I was hollering please just leave me on the floor!!!" They did not stop until Plaintiff was back in the wheelchair. Plaintiff was in bad pain and "scared not Chavez or Howard check me for injuries."

Once they had him in the wheelchair again, "in seconds they put a seatbelt on me." Howard was then laughing and making fun of Plaintiff.

Plaintiff believes the incident was deliberate. "Staff at CCI was angry with me because staff believed I was faking my medical condition." C.O. Avila told Plaintiff at the gate that Plaintiff has been going out to the hospital a lot. Plaintiff told him it is because of Plaintiff's medical condition – he is old and sick. Never before had a gate officer gotten in the van to converse with Plaintiff until that day.

Howard and Chavez did not take Plaintiff to the hospital to get treated for injuries. Plaintiff never received medical treatment for his injuries at CCI. Plaintiff was in unbearable pain for about two weeks when he got transferred to SATF where he has been receiving pain pills for the pain and injuries from the vehicle accident on 12/12/22.

This action proceeds against Defendants Howard and Chavez for deliberate indifference to medical care in violation of the Eighth Amendment for how they were moving Plaintiff inside the van and for failure to obtain medical care for Plaintiff following the vehicle incident/accident. (ECF Nos. 11, 12.)

## IV. Defendants' Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not

suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**B. Undisputed Material Facts ("UMF")**[2]

1. Plaintiff is a state prisoner proceeding in this action *pro se*. (ECF No. 1 at 1.) At all times relevant to the allegations in Plaintiff's Complaint, Defendants Howard and Chavez were staff members at California Correctional Institution ("CCI"). (ECF No. 1 at 3; ECF No. 38-8, Declaration of N. Howard ("Howard Decl.") at ¶ 1; ECF No. 38-9, Declaration of M. Chavez ("Chavez Decl.") at ¶ 1.)

[2] *See* Defendants' Separate Statement of Undisputed Facts in Support of Motion for Summary Judgment, (ECF No. 38-10), and Plaintiff's Opposition (ECF No. 39.). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement.

2. On December 12, 2022, Defendants transported Plaintiff in a van from CCI to Palmdale Regional Medical Center for a scheduled medical appointment and back to CCI. (Ex. C [ECF No. 38-5] to Declaration of Vazirani ("Vazirani Decl."); Howard Decl. ¶ 2; Chavez Decl. ¶ 2.)

3. Defendant Chavez drove the van from Palmdale Regional Medical Center to CCI. (Vazirani Decl., Ex. C [ECF No. 38-5].) While the van was moving, an SUV pulled out from a gas station and nearly stopped in the same lane as the van, causing Chavez to brake suddenly.[3] Plaintiff, who was in a wheelchair in the back of the van, fell out of the wheelchair onto the floor of the van. (Vazirani Decl., Ex. B [ECF No. 38-4] and Ex. C [ECF No. 38-5]; Howard Decl. ¶ 3; Chavez Decl. ¶ 3.)

4. Defendant Chavez pulled over on the side of the freeway as safely as possible. Defendants then exited the van and walked to the back doors to check on Plaintiff.[4] (Howard Decl. ¶ 3; Chavez Decl. ¶ 3; Vazirani Decl. Ex. C [ECF No. 38-5].)

5. Plaintiff appeared uninjured. He requested that Defendants leave him on the floor of the van. Defendants waited several minutes to allow Plaintiff to collect himself and continued to assess him for injuries. If Defendants had determined that Plaintiff's condition constituted a medical emergency, they would have called 911 and waited for an ambulance. After assessing Plaintiff, Defendants then lifted Plaintiff off the floor of the van and onto the wheelchair. Defendants secured Plaintiff to the wheelchair with a seatbelt. (Howard Decl. ¶ 3; Chavez Decl. ¶ 3; Vazirani Decl., Ex. B [ECF No. 38-4] and Ex. C [ECF No. 38-5].)

---

[3] Plaintiff claims that California state law does not permit gas stations on the side of the freeway, where vehicles can just drive out into the freeway where traffic is traveling at sped of 60 to 80 MPH. (ECF No. 39 at 2.) Plaintiff's purported factual dispute regarding the location of a gas station is irrelevant. *See Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted."). Plaintiff does not raise a genuine dispute that an SUV nearly stopped in the same lane as the van, causing Chavez to brake suddenly.

[4] Plaintiff disputes UMF 4 citing Defendants' 12/12/2022 memoranda, (ECF Nos. 38-4, 38-5, Defs' Exs. B and C). (ECF No. 39 at 2.) The cited memoranda indicate that Chavez pulled to the side of the road and Defendants both exited the van to check on Plaintiff. (*See* ECF Nos. 38-4, 38-5.) UMF 4 is therefore deemed undisputed.

6. At the time of the incident Plaintiff weighed approximately 270 pounds while Defendants weighed approximately 150 to 160 pounds each. Due to the difference in weight, Defendants struggled to place Plaintiff back into the wheelchair. (Vazirani Decl., Ex. A [ECF No. 38-3] at 47, 54.)

7. Defendants and Plaintiff returned to CCI, where Defendants took him to the CCI Treatment and Triage Area, where he was examined by Nurse Nantos.[5] (Vazirani Decl., Ex. D [ECF No. 38-6], Ex. B [ECF No. 38-4], and Ex. C [ECF No. 38-5]; Howard Decl. ¶ 4; Chavez Decl. ¶ 4.)

8. A CDCR 7219 Medical Report of Injury or Unusual Occurrence completed by staff at CCI's Treatment and Triage Area indicated redness, abrasions, and swelling on various parts of Plaintiff's body.[6] (Vazirani Decl, Ex. D [ECF No. 38-6].)

9. Plaintiff has a number of ongoing medical conditions and is frequently treated in relation to those conditions. Imaging done in the weeks following the incident was as follows:

    a. An X-ray of Plaintiff's cervical spine on December 13, 2022 showed stable postsurgical changes of previous anterior discectomy and fusion at C5-C6 level, moderate degenerative changes at C4-C5, and no acute fracture or subluxation. The prevertebral soft tissues were within normal limits;

    b. X-ray of the lumbar spine on December 20, 2022 showed no acute fracture or subluxation and mild multilevel degenerative endplate osteophytosis with

---

[5] Although not entirely clear, Plaintiff appears to dispute the fact that he was examined by Nurse Nantos, stating "Nurse natos and no other nurse would touch me on 12/12/2022, at Treatment Triage Area. or ask any questions." (ECF No. 39 at 3.) However, it is undisputed that a CDCR 7219 Medical Report of Injury or Unusual Occurrence was completed on December 12, 2022, and bears Nurse Nantos' signature. (ECF No. 38-6.) According to that report, Plaintiff was seen at 1621, and injuries, including abrasions, swelling, pain, and redness were noted. (*Id.*) UMF 7 is therefore deemed undisputed. Moreover, any complaints regarding the nature of the assessment or examination by CCI medical staff are not relevant to whether Defendants Chavez and Howard took Plaintiff to the CCI Treatment and Triage Area for evaluation.

[6] Plaintiff disputes UMF 8, arguing that it was not Nurse Nantos filling out the form, and instead it was a different nurse. (ECF No. 39 at 3.) Plaintiff's argument does not raise a genuine dispute of material fact. The form is signed by Nurse Nantos, (*see* ECF No. 38-6), and Plaintiff does not dispute the substance of the report. UMF 8 is therefore deemed undisputed.

relative preservation of vertebral body heights and disc spaces; and

c. MRI of the lumbar spine on March 28, 2023 showed mild degenerative spondylosis with mild central canal and neural foraminal narrowing.[7] (Vazirani Decl., Ex. E [ECF No. 38-7].)

10. Defendant Howard checked with Outpatient Housing Unit staff on Plaintiff's condition a week after the incident out of concern for Plaintiff's well-being.[8] (Howard Decl. ¶ 5.)

11. There is no medical evidence that Plaintiff sustained injuries on the day of the incident, or has lasting injuries from the incident.[9] (Vazirani Decl., Ex. E [ECF No. 38-7] and Ex. D [ECF No. 38-6].)

**C. Analysis**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further

[7] Plaintiff disputes that an examination or x-rays were completed on 12/13/2022, asserting that he was in the SHU all day on 12/13/2022. (ECF No. 39 at 4.) Plaintiff does not raise a genuine dispute of material fact regarding the substance and impressions from the x-ray report. Although he disputes the date, Plaintiff does not dispute that x-rays were completed at some point in the weeks following the incident.

[8] Plaintiff disputes UMF 10, claiming that there is "no evidence that Howard did what he wrote in his Declaration about checking on Plaintiff's condition." (ECF No. 39 at 4.) However, Defendant Howard declared under penalty of perjury that he "check[ed] on [Plaintiff's] condition with Outpatient Housing Unit staff a week after the incident out of general concern for his well-being." (Howard Decl. ¶ 5.) Plaintiff does not cite supporting evidence for the claimed dispute as required by Rule 56(c)(1) and Local Rule 260(b). The fact as presented by Defendants is therefore accepted as undisputed.

[9] Plaintiff disputes UMF 11 but does not cite supporting evidence for the claimed dispute as required by Rule 56(c)(1) and Local Rule 260(b). Plaintiff references the memoranda and declarations completed by Defendants Howard and Chavez, but those documents do not raise a genuine dispute of material fact regarding the medical evidence. (*See* ECF Nos. 38-4, 38-5, 38-8, 38-9.)

significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–106). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Serious Medical Need

Based on the undisputed evidence, the Court finds that Plaintiff cannot demonstrate a serious medical need following his fall out of his wheelchair onto the floor of the van and at the time Defendants lifted Plaintiff onto his wheelchair. Defendants observed Plaintiff to be uninjured after his fall out of the wheelchair and onto the floor of the van, and they would have called 911 and waited for an ambulance if they had determined Plaintiff's condition constituted a medical emergency. UMF 5. While Plaintiff alleges that he was in pain after the incident, Plaintiff has not proffered any medical evidence demonstrating he had apparent injuries such that the failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain. Plaintiff may not rest his opposition solely on his allegations. *Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").

Further, upon returning to CCI, Defendants took Plaintiff to the CCI Treatment and

Triage Area, where medical staff documented that Plaintiff had pain, redness, abrasions, and swelling on various parts of his body. UMF 7, 8. Courts have held that these types of injuries do not amount to a serious medical need for Eighth Amendment purposes. *See Zoellner v. City of Arcata*, 588 F. Supp. 3d 979, 1001 (N.D. Cal. 2022) (serious medical need found where evidence "suggests more than simple bruising and swelling"); *Goodwin v. Gomez*, No. 24-cv-06645 BLF (PR), 2025 WL 458422, at *2 (N.D. Cal. Feb. 11, 2025) ("Plaintiff's allegation that he suffered abrasions and cuts does not establish that he had a serious medical need."); *Correa v. Braudrick*, No. 1:19-cv-00369-DAD-BAK (GSA) (PC), 2022 WL 2308803, at *10 (E.D. Cal. June 27, 2022) (noting courts have held allegations of pain and swelling do not amount to a serious medical need and collecting cases); *MacFalling v. Nettleton*, No. CV 17-02399 SVW (AFM), 2017 WL 3498616, at *7 (C.D. Cal. Aug. 15, 2017) (determining that cuts, abrasions, and swollen hands resulting from overly tight handcuffs did not rise to level of a serious medical need); *Vilchis v. City of Bakersfield*, No. 1:10-cv-00893 LJO JLT, 2012 WL 113747, at *12 (E.D. Cal. Jan. 13, 2012) ("Even assuming the truth of Plaintiff's assertions that he had visible injuries to the head and face, the evidence in the record describes those injuries to be abrasions and contusions, with some associated bleeding. This does not rise to the level of a 'serious medical need,' for purposes of the Eighth Amendment."). Additionally, imaging conducted in the following weeks and months showed no abnormalities associated with that incident or that Plaintiff had lasting injuries from the incident. UMF 9, 11.

Plaintiff has identified no medical evidence to demonstrate a serious medical need after his fall from the wheelchair in the van and Defendants lifting him onto his wheelchair. Plaintiff therefore fails to raise a genuine dispute of material fact that he had a serious medical need.

<u>Deliberate Indifference</u>

Even assuming Plaintiff had a serious medical need after falling out of his wheelchair onto the floor of the van and Defendants lifting him back onto the wheelchair, the undisputed evidence fails to show that Defendants were deliberately indifferent to such need. After Defendant Chavez pulled the van over to the side of the freeway, Defendants exited the van and walked to the back doors to check on Plaintiff. UMF 3-4. Plaintiff appeared uninjured. UMF 5.

Defendants assessed him for injuries at that time and did not determine that Plaintiff's condition constituted a medical emergency. UMF 5. Defendants also waited several minutes before lifting Plaintiff back into the wheelchair. UMF 5.

Plaintiff asserts that he pleaded to be left on the floor, verbally resisted Defendants moving him back into the wheelchair, and that Defendants were inflicting pain by moving him back to the wheelchair. (ECF No. 39 at ¶¶ 5, 12.) Defendants admit that Plaintiff requested he be left on the floor of the van, and that Plaintiff complained his neck and knees hurt. UMF 5; Howard Decl. ¶ 3. Importantly, however, Plaintiff does not dispute that he appeared to be uninjured and that Defendants assessed him for injuries before lifting him onto the wheelchair. UMF 5. Plaintiff fails to raise a genuine dispute of material fact that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety.

To the extent Plaintiff alleges that Defendants twisted, dropped, bent, dragged, and rolled Plaintiff while placing him back onto the wheelchair, (*see* ECF No. 1 at 20), Plaintiff admits that Defendants struggled to place Plaintiff back into his wheelchair because of the differences in weight between Plaintiff and Defendants. UMF 6. Even if Plaintiff was in pain after being lifted onto the wheelchair, it is undisputed that Defendants took Plaintiff to the CCI Treatment and Triage Area upon their return to CCI, where Plaintiff was assessed by medical staff. UMF 7-8. As discussed above, that assessment identified injuries which do not rise to the level of a serious medical need for purposes of the Eighth Amendment.

Plaintiff fails to demonstrate that there is material dispute of fact as to whether Defendants Chavez and Howard were deliberately indifferent to a serious medical need following Plaintiff's fall from the wheelchair onto the floor of the van and Defendants lifting him back into the wheelchair or by Defendants opting to return Plaintiff to CCI rather than obtaining medical care while pulled over on the side of the road.

<u>Qualified Immunity</u>

Defendants also argue that the Court should grant summary judgment on the basis of qualified immunity. However, the Court finds that this argument need not be reached based upon the above determination regarding the undisputed facts in this case.

**V. Order and Recommendations**

Based on the foregoing, it is HEREBY ORDERED that Defendants' motion to strike, (ECF No 42), is GRANTED.

Furthermore, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, (ECF No. 38), be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 11, 2026**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE